United States District Court
Southern District of Texas
**ENTERED**
May 18, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| DAVID RODRIGUEZ, (TDCJ #02104651), | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 7:21-CV-285 |
| BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION, | § | |
| Respondent. | § | |

## REPORT & RECOMMENDATION

Petitioner, David Rodriguez, a state prisoner proceeding *pro se*, initiated this action in July 2021 by filing a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) This case was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b). On January 18, 2022, Respondent filed a Motion for Summary Judgment with Brief in Support. (Dkt. No. 10.) On March 25, 2022, Petitioner filed Petitioner's Response to Respondent's Motion for Summary Judgment ("Petitioner's Response"). (Dkt. No. 14.) On March 25, 2022, Petitioner also filed a Motion for Appointment of Counsel (Dkt. No. 15) and Motion for Evidentiary Hearing (Dkt. No. 16).

Petitioner seeks review of being found guilty by a jury in Hidalgo County, Texas, of aggravated sexual assault of a child in November 2016, and his subsequent mandatory sentence to life imprisonment based on his repeat sexual offender status. *See* Dkt. No. 1; *Rodriguez v. State*,

No. 13-16-00653-CR, 2018 WL 2252885, at *1 (Tex. App.—Corpus Christi May 17, 2018, pet. ref'd). Petitioner seeks habeas review at this stage based on various claims of ineffective assistance of counsel, including a Confrontation Clause claim, failure to object to certain evidence presented at Petitioner's trial, failure to investigate matters involved in Petitioner's case, and generally for the cumulative effect of counsel's errors. (Dkt. No. 1 at 6-7, 11-16.)

Respondent argues that Petitioner's claims are time-barred from habeas review (Dkt. No. 10); Petitioner claims they are not and seeks federal habeas review (Dkt. No. 14).

After carefully reviewing the filings, record, and relevant law, and for the reasons set forth below, Petitioner's claims are time-barred from review. Therefore, the undersigned recommends Respondent's Motion for Summary Judgment (Dkt. No. 10) be **GRANTED**, Petitioner's Motions for Appointment of Counsel (Dkt. No. 15) and for Evidentiary Hearing (Dkt. No. 16) be **DENIED as moot**, Petitioner's § 2254 petition (Dkt. No. 1) be **DISMISSED**, and this cause of action be closed.

Finally, it is recommended that the District Court **DECLINE** to issue a Certificate of Appealability in this matter.

## JURISDICTION

The Court has jurisdiction over habeas cases pursuant to 28 U.S.C. § 1331. A habeas petition may be filed in either the district where a petitioner is in custody or in the district where a petitioner was convicted. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000); *see also Granger v. Lumpkin*, No. CV 4:21-1408, 2021 WL 1723480, at *1 (S.D. Tex. Apr. 30, 2021). As noted, Petitioner was convicted in the state district court out of Hidalgo County, Texas; therefore, this petition is filed within the appropriate court. 28 U.S.C. § 124(b)(7).

## BACKGROUND

### I. Criminal Prosecution and Procedural History

#### a. Allegations & Circumstances of Prosecution

On November 10, 2016, after a three-day jury trial in the 139th District Court, Hidalgo County, Texas, Petitioner was found guilty of aggravated sexual assault of a child. (Dkt. No. 11-16, Nov. 10, 2016 Trial Tr. at 113:19-21.) Petitioner had initially been charged in a two-count indictment with (1) aggravated sexual assault of a child younger than 14 years of age on or about July 20, 2015, by intentionally and knowingly causing the penetration of the victim's anus by the Defendant's sexual organ, and (2) continuous sexual abuse of a child, when the Petitioner was 17 years of age or older and the victim was younger than 14 years of age, on two or more occasions, during a period that was 30 days or more in duration, from on or about April 21, 2015 to July 21, 2015, in Cause No. CR-4997-15-C. *See* Dkt. No. 11-70 at 20-21; *see also* Tex. Penal Code §§ 22.021, 21.02 (West 2017). The jury acquitted Petitioner as to each of the charged allegations but convicted Petitioner as to the lesser-included offense of Count Two—aggravated sexual assault of a child.[1] (Dkt. No. 11-16, Nov. 10, 2016 Trial Tr. at 113:19-21, 116:1-3.) Regarding each count,

[1] Within Count Two, the jury had to conclude Defendant committed two or more acts of sexual abuse, said acts of sexual abuse having been one or more of the seven manner and means for violations listed, and that said acts were during a period that was 30 days or more in duration. (Dkt. No. 11-70 at 20-21, 29-37 (Jury Charge).) One category of sexual abuse acts were aggravated sexual assault by intentionally or knowingly causing penetration in one or more of the following five ways: the victim's sexual organ by Defendant's finger, the victim's anus by Defendant's sexual organ, the victim's sexual organ by Defendant's sexual organ, the victim's mouth by Defendant's sexual organ, or the victim's anus by Defendant's finger. *Id.*; *see also* Tex. Penal Code § 22.021. The last two manner and means options involved indecency with a child by contact, with the intent to arouse or gratify the Defendant's sexual desire, by causing the victim to touch Defendant's genitals or by Defendant touching any part of the victim's genitals. *Id.; see also* Tex. Penal Code § 21.11.

If the jury did not find Petitioner guilty of the offense of continuous sexual assault of a child as charged in the indictment, the jury could then consider the lesser-included offense of aggravated sexual assault of a child which did not require the jury to find that said act was performed more than once or over a period of at least 30 days, by any of the five manner and means listed above. (Dkt. No. 11-70 at 31-32 (Jury Charge).) And, in turn, if the jury did not find Petitioner guilty of aggravated sexual assault of a child, the jury could then consider the lesser-included offense of indecency with a child by contact by the

the State provided notice within the indictment that, prior to said allegations, Petitioner had been convicted of an offense under Texas Penal Code § 22.011, sexual assault of a child on September 18, 2008, in the 139th District Court, Hidalgo County, Texas. (Dkt. No. 11-70 at 20-21.) With said notification, and upon conviction of either count the sentence was automatic life in prison. *See* Dkt. No. 17 at 5-8; Tex. Penal Code § 12.42(c)(2). The same applied to a conviction for the lesser-included offense of aggravated sexual assault of a child. Tex. Penal Code § 12.42(c)(2). On November 21, 2016, Petitioner was sentenced to automatic life in prison as mandated by statute. (Dkt. No. 11-17, Nov. 21, 2016 Sentencing Tr. at 7:23-24).

As for the previous conviction, on September 18, 2008, Petitioner had pled guilty to one count of sexual assault of a child in Cause No. CR-2567-08-C and by plea agreement was placed on seven years of deferred adjudication. (Dkt No. 11-29 at 39-43 ("Order of Deferred Adjudication & Community Supervision"); *see also* Dkt. No. 11-36 at 6-14.) The pending motion for adjudication of guilt[2] in Cause No. CR-2567-08-C was carried forward pending the trial in the new matter even though Petitioner's counsel indicated Petitioner would plead true to the allegations in the petition. *Id.* at 9. On November 21, 2016, Petitioner's deferred adjudication was revoked, and he was sentenced to 10 years in state prison to run concurrent with the life sentence. (Dkt. No. 11-17, Nov. 21, 2016 Sentencing Tr. at 1-10.)

In summary, the evidence presented at trial established that the victim, Petitioner's niece,

---

two different manner and means listed above. *Id.* at 31-33. Finally, if the jury did not find Petitioner guilty of indecency with a child by contact, then the jury could consider the lesser-included offense of indecency with a child by exposure. *Id.* at 33-34; *see also* Tex. Penal Code §§ 21.11, 21.02(e)(3). Ultimately, the jury found Petitioner guilty of one of the lesser-included charges—aggravated sexual assault of a child. *See* Dkt. No. 11-70 at 38 (Jury Verdict), 44-46 (Judgment of Conviction by Jury and Sentence to the Institutional Division of the Texas Department of Criminal Justice Nunc Pro Tunc).

[2] There were other allegations of failure to follow conditions of supervised release besides the new allegations of sexual assault, but said allegations are not relevant to these proceedings. *See* Dkt. No. 11-29 at 56.

provided an outcry statement to another family member that her uncle, Petitioner, had been inappropriately touching her in her private area several times while the victim resided in the same residence as her mother, her brother, her grandfather, and Petitioner. (Dkt. No. 11-15, Nov. 9, 2016 Trial Tr. at 94-114.) At the time of the outcry and allegations, the victim was seven years old, and Petitioner was over 17 years old. (Dkt. Nos. 11-15, Nov. 9, 2016 Trial Tr. at 29:16-17; 11-16, Nov. 10, 2016 Trial Tr. at 21:18-20.) Besides the initial outcry to a family member, the victim had set forth the same allegations against Petitioner when interviewed by a S.A.N.E. nurse and the victim testified to such abuse at trial. (Dkt. Nos. 11-18 at 36 (State's Exhibit 20); 11-15, Nov. 9, 2016 Trial Tr. at 95-101.) Further, during the trial, the S.A.N.E. nurse testified that the victim's brother, who is a year older than the victim, stated to the nurse that his sister (the victim) told the brother about the touching and the brother was going to inform their dad, but the victim would not let him. (Dkt. No. 11-15, Nov. 9, 2016 Trial Tr. at 76:4-8.) Evidence was also presented that law enforcement found references to two videos on a cell phone connected to Petitioner with titles referencing an adult having sex with a child and child pornography. (Dkt. No. 11-14, Nov. 8, 2016 Trial Tr. at 154:15-25.) After hearing testimony from the victim, the S.A.N.E. nurse, the victim's counselor, law enforcement, family members, and witnesses for Petitioner, the jury returned a verdict to the noted lesser-included offense. (Dkt. No. 11-16, Nov. 10, 2016 Trial Tr. at 113:19-21.)

**b. Appeal**

Petitioner subsequently appealed the conviction and sentence in each matter. On November 28, 2017, after appellate counsel filed an *Anders* brief, Petitioner filed objections to said brief with the Thirteenth Court of Appeals. *See* Appellant's Objections to App. Couns. Anders Brief, *Rodriguez*, 2017 WL 6268763, at *1-3. On May 17, 2018, the trial court's

judgment was affirmed. *See* Dkt. Nos. 11-1, 11-2, 11-56, 11-57; *Rodriguez*, 2018 WL 2252885, at *1.

On June 18, 2018, Petitioner filed a motion requesting an extension of time to file a petition for discretionary review (PDR). (Dkt. No. 11-62.) On June 20, 2018, the Court of Criminal Appeals granted said extension and provided Petitioner until August 21, 2018 to file his petition. (Dkt. Nos. 11-26, 11-58). On August 24, 2018, the Clerk of the Texas Court of Criminal Appeals (TCCA) received the petition. (Dkt. Nos. 11-27, 11-59, 11-63.) On November 7, 2018, the Petitioner's PDR was refused. (Dkt. Nos. 11-28, 11-60.) On February 5, 2019, 90 days after Petitioner's PDR was refused, his conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A); *see also* Sup. Ct. R. 13(1).

On January 26, 2020, Petitioner filed an application for state writ of habeas corpus with a supporting memorandum.[3] (Dkt. No. 11-70 at 61, 102.) On February 25, 2020, the State filed a response. *Id.* at 138-64. On March 3, 2020, the district court judge for the 139th District Court, Hidalgo County, Texas, ordered Petitioner's prior counsel, Alfonso Ricardo Flores and Rogelio Solis ("Trial Counsel"), to develop the facts regarding the state habeas petition claims designated as Petitioner's Grounds Ten, Eleven, Twelve, and Thirteen,[4] each relating to allegations of Trial Counsel's ineffective assistance (the "Affidavit Order"). *Id.* at 166-68. On March 23, 2020, Petitioner filed a request for a "live evidentiary hearing" with the district court clerk. *Id.* at 181. On March 30, 2020, Rogelio Solis filed an affidavit in compliance with the Affidavit Order. *Id.* at 175-79. On November 6, 2020, the State filed a supplemental response to Petitioner's state writ. *Id.* at 187-214. On November 16, 2020, the trial judge issued a Findings of Fact,

---

[3] The Clerk's Office received the application on February 11, 2020.

[4] *See infra* Section II: Summary of the Pleadings at 8-9.

Conclusions of Law, Recommendation and Order in which the state court recommended that the writ be denied as the ineffective assistance of counsel claims were without merit. (Dkt. No. 11-70 at 215-29.)

On December 22, 2020, Petitioner filed objections to both the State's response and the district court's recommendation to deny Petitioner's request for habeas relief under Article 11.07. (Dkt. No. 11-69.) On April 20, 2021, Petitioner filed a motion to stay the proceedings to allow Petitioner to amend his state habeas application (Dkt. No. 11-67) and, in a letter dated April 23, 2021, the Clerk for the Court of Criminal Appeals advised petitioner that he had 45 additional days to amend his Article 11.07 application. (Dkt. No. 11-68 at 7.) Said amended application was received on June 10, 2021, along with Petitioner's memorandum in support and attached exhibits. *Id.* at 8-102.

On June 30, 2021, the TCCA followed the recommendation of the trial court and denied the first writ "without written order on findings of trial court without hearing and on the court's independent review of the record." *Ex parte Rodriguez*, WR-92,042-01; Dkt. No. 11-64[5]. On July 22, 2021, Petitioner filed a letter request dated July 15, 2021, for the docket sheet in Cause No. CR-4997-15-C (Dkt. No. 11-65) with the Hidalgo County Clerk and the next day, July 23, 2021, Petitioner filed his federal habeas corpus petition (Dkt. No. 1). Importantly, Petitioner placed the federal habeas petition into the prison mail system on July 14, 2021.[6] (Dkt. No. 1 at 10.)

---

[5] Petitioner has provided a copy of the official notice of said denial and has pointed out that according to the postage timestamp, said notice was not mailed until July 7, 2021. (Dkt. No. 14 at 13.)

[6] Petitioner signed on July 14, 2021 that he would submit the petition to officials on July 14, 2021. (Dkt. No. 1 at 10.) Federal habeas petitions follow the prison mailbox rule, where the petition is deemed filed when the *pro se* prisoner submits the petition to prison authorities. *Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013). The envelope stamp says July 23, which is the day the District Court received the petition, but the date of filing for this habeas review is July 14, 2021. *See* Dkt. No. 1-1.

## II. Summary of the Pleadings

Petitioner asserts fifteen grounds in his § 2254 petition. (Dkt. No. 1.) First, Petitioner claims Trial Counsel provided ineffective assistance by failing to file a motion for a new trial based on violation of Confrontation Clause due to State's failure to have D.A.[7] testify at trial and State's response to said claim was unreasonable. (Dkt. No. 1 at 6.) Second, the State's response is unreasonable to the claim of ineffective assistance of appellate counsel for filing an *Anders* brief, the district court abused its discretion by allowing admission of cellphone over Trial Counsel's objection, Petitioner was denied right to confront witness when hearsay statement was admitted during trial, and jury charged should have been challenged on appeal. *Id.* at 6, 11. The third through fifteenth grounds are all ineffective assistance of counsel claims relating to Trial Counsel's defense of Petitioner and, as in the above two claims, Petitioner argues "State's response is unreasonable" as to each of these claims. Third, Petitioner argues Trial Counsel failed to object to the jury charge on double jeopardy grounds and because generalized verdict forms were used. *Id.* at 7. Fourth, Petitioner argues Trial Counsel failed to file a motion to quash the indictment on grounds of double jeopardy. *Id.* Fifth, Trial Counsel failed to object to a video played during closing arguments. *Id.* at 12. Sixth, Trial Counsel failed to object to or challenge the Nancy Kellogg Medical Study[8] used to prejudice Petitioner under Rules 702 and 705. *Id.* at 17. Seventh, Trial Counsel failed to object to undocumented medical evidence under Rule 403, hearsay, and chain of custody. (Dkt. No. 1 at 12.) Eighth, Petitioner alleges Trial Counsel did

---

[7] Petitioner identifies victim's brother but due to fact that he is minor, said individual will be referenced by his initials. (Dkt. No. 1 at 6.)

[8] The Nancy Kellogg Study was discussed by the S.A.N.E. nurse at trial. *See* Dkt. No. 11-15, Nov. 9, 2016 Trial Tr. at 48:24-25, 49:1-24. The nurse explained the study included examinations of 36 patients who were pregnant or adolescents who were pregnant, and, although they were pregnant, 34 out of 36 showed no trauma to their hymen or female sexual organ. *Id.*

not object when DNA analyst was allowed to testify to results without admitting said results for jury to review. *Id.* at 13. Ninth, Petitioner alleges Trial Counsel failed to consult or obtain an expert. *Id.* Tenth, Petitioner claims Trial Counsel failed to investigate the medical records of the alleged victim pertaining to her alleged constipation/stomach problems beginning at the age of two. *Id.* at 13-14. Eleventh, Petitioner claims Trial Counsel failed to investigate allegations against "Mr. Alvarado", the victim's father, whom Petitioner claims is the real culprit. *Id.* at 14. Twelfth, Trial Counsel failed to interview or subpoena a "crucial witness", Petitioner's girlfriend Lynette. *Id.* Thirteenth, Trial Counsel was ineffective by "opening the door" to a hearsay statement relating to a second sexual assault exam the S.A.N.E. nurse conducted involving the victim's brother (D.A.). (Dkt. No. 1 at 15.) Fourteenth, Trial Counsel failed to suppress the cell phone evidence presented at trial. *Id.* Fifteenth, Trial Counsel was ineffective based on the cumulative effect of all of the errors noted in previous 14 claims by Petitioner. *Id.* at 15-16.

On August 23, 2021, Petitioner filed a Memorandum in Support of an Application for Federal Writ of Habeas Corpus Under Title 28 U.S.C. § 2254. (Dkt. No. 4.) Along with the memorandum, Petitioner attached several exhibits, including (1) an affidavit from his alleged girlfriend, Lynette Rocha (Dkt. No. 4-1); (2) an Order Designating Issues by the District Court in the 139th Judicial District, Hidalgo County, Texas dated February 25, 2020[9] (Dkt. No. 4-2); (3) an affidavit from the second chair of Petitioner's trial counsel, Rogelio Solis[10] (Dkt. No. 4-3); (4)

[9] The issues to be investigated were (1) Ground Ten, defense counsel should have investigated victim's medical history more thoroughly to establish that victim's complaints of pain and constipation predated Petitioner's access to the child; (2) Ground Eleven, that defense counsel failed to investigate into the possibility of an alternate abuser, specifically, the victim's father; (3) Ground Twelve, that defense counsel failed to summon Lynette, Petitioner's alleged girlfriend, to provide testimony beneficial to the defense; and (4) Ground Thirteen, that defense counsel should not have mentioned the medical examination of the victim's brother because said reference 'opened the door' to the victim's brother's hearsay assertion by the nurse examiner when she testified that said brother had to meet with the nurse "because [his] t[í]o David touched [his] sister." (Dkt. No. 4-2 at 1-3.)

[10] In it, Mr. Solis begins by emphasizing that he was assisting Alfonso Ricardo Flores, not running the

an excerpt of State's Supplemental Response to Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07[11] (Dkt. No. 4-4); (5) an excerpt of the Findings of Fact, Conclusions of Law, Recommendation and Order[12] from state court (Dkt. No. 4-5); (6) a Mission Regional Medical Center Laboratory Report showing the victim tested negative for chlamydia and gonorrhea (Dkt. No. 4-6)[13]; (7) a Renaissance

---

strategic operation of the defense. (Dkt. No. 4-3 at 2.) Mr. Solis states that he and Mr. Flores relied on the victim's medical history from the District Attorney's Office. *Id.* at 3. The medical history from the Knapp Medical Center related to the victim's broken thumb and therefore was irrelevant. *Id.* Mr. Solis stated that the victim did not have any past medical history from Mission Regional Hospital other than the treatment for "Chlamydia/gonorrhea" (note: there is no evidence in the record that the victim had either of these sexually transmitted diseases—*see infra* n.13) and the subsequent referral to a pediatric infectious disease specialist. *Id.* That medical finding was consistent with Lynette's affidavit that Petitioner told her to take a pill to get rid of a possible sexually transmitted disease. *Id.*; *see also* Dkt. No. 4-1. The victim's pain and constipation would have had no effect in the jury's deliberation of the verdict. (Dkt. No. 4-3 at 3.) As for investigating an alternate abuser, Mr. Solis pointed to the fact that the victim had consistently identified Defendant as the abuser to her cousin, her mother, and to the S.A.N.E. nurse and had not identified another alternative abuser. *Id.* at 4. Mr. Solis then addressed the failure to call Lynette as a witness by stating this was a strategic decision by Mr. Flores. *Id.* If Lynette testified, then the jury would have known that Petitioner: "(1) was a registered sex offender for assaulting another child, (2) was potentially afflicted with a sexual[ly] transmitted disease because he was taking medication . . . ; and (3) was possibly using the victim's phone to watch pornography." *Id.* at 4-5. Finally, regarding the victim's brother, Mr. Solis states he deferred to Mr. Flores's experience and determination in the "cross-examination of the victim's brother" (note: there was no cross-examination of the brother, and the brother was not called to the stand), however, Mr. Solis's opinion is that evidence, if presented, would not have affected the jury's deliberations. *Id.* at 5. (It should be noted that Mr. Flores did not provide an affidavit during these proceedings in state court.)

[11] State concurred in Mr. Solis's assessment as to Ground Ten, stated Mr. Solis's explanation as to Ground Eleven was credible and supported, and concluded Mr. Solis's strategic decision was well-reasoned and does not support a finding of deficient performance as to Ground Twelve. (Dkt. No. 4-4 at 2-4.) (In the paperwork provided, Petitioner did not set forth State's response to Ground Thirteen. The State's response was that Mr. Solis was in no position to provide a substantive response, but State did note and argue that any comment by the brother was "merely cumulative" of the evidence presented and thus could not "have had an appreciable effect on the jury." *See* Dkt. No. 11-70 at 209.

[12] The court found that Petitioner failed to meet his burden of showing that further investigation relating to Ground Ten had any likelihood of resulting in a different outcome, that Mr. Solis's explanation regarding Ground Eleven was credible and supported, and that Mr. Solis's trial decision cannot support a finding of deficient performance as it relates to Ground Twelve. (Dkt. No. 4-5 at 1-2.) (As to Ground Thirteen, the court made a finding that hearsay testimony of the victim's brother's comment was cumulative; therefore, any error on the part of counsel was not prejudicial as it did not affect the outcome of the proceedings. *See* Dkt. No. 11-70 at 227.)

[13] Petitioner is, from what the undersigned can glean from the medical records, correct in pointing out the

Laboratories Report that the victim tested negative for HIV (Dkt. No. 4-7); (8) a different document showing the victim was HIV negative (Dkt. No. 4-8); (9) a contact log narrative[14] (Dkt. No. 4-9); (10) a letter from appellate attorney Alfredo Morales, Jr. stating he reviewed Petitioner's case and found no legal issues warranting appellate review (Dkt. No. 4-10); (11) a letter to the District Court Clerk advising that Petitioner had filed his memorandum (Dkt. No. 4-11); and (12) an envelope showing Petitioner had sent said letter (Dkt. No. 4-12).

On January 18, 2022, State submitted Respondent's Motion for Summary Judgment with Brief in Support ("Respondent's Motion for Summary Judgment"). (Dkt. No. 10.) State first acknowledges jurisdiction by stating that Defendant was convicted in Hidalgo County, Texas. *Id.* at 1 (citing *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000); 28 U.S.C. § 124(b)(7)). State argues, however, that Petitioner is barred by AEDPA's[15] limitations period pursuant to 28

---

error of his prior counsel to suggest the victim had a sexually transmitted disease. (Dkt. No. 4 at 15.) However, even if Mr. Solis erred in suggesting the victim had been treated for chlamydia and/or gonorrhea in his affidavit to the state court, this has no effect on what happened at state trial. *See supra* n.10. At Petitioner's trial, no evidence or testimony was presented to show the victim had a sexually transmitted disease. State only presented evidence that the victim was initially reactive for HIV, but ultimately tested negative for it. (Dkt. No. 11-15, Nov. 9, 2016 Trial Tr. at 47:11-13, 48:1-8.)

[14] This is the only documentation of sexual abuse by "Mr. Alvarado" that Petitioner is concerned about. The log notes, themselves, appear to be from Texas Department of Family and Protective Services, Child Protective Services (CPS), and the notes set forth that the "[the Victim] disclosed to the Sane [sic] nurse she was sexually abuse [sic] by Mr. Alvarado." (Dkt. No. 4-9.) Within the same paragraph, the report summarizes that the victim identified the Petitioner as the perpetrator of the sexual assault. *Id.* Further, this corresponds with the evidence presented at trial. The S.A.N.E. nurse's records and testimony affirmed that the victim had consistently told the nurse that it was Petitioner, not her father, who had abused her. The S.A.N.E. nurse testified at the trial that the victim told her it was David who had abused her. (Dkt. No. 11-15, Nov. 9, 2016 Trial Tr. at 32:15, 33:4.) And the S.A.N.E. nurse testified that she asked the victim's mother when the last time the victim was around Petitioner, not the victim's father. *Id.* at 34:23-25. The victim only mentioned her father to the nurse when she was describing what Petitioner was forcing her to do and that she tried to tell her father about it. *Id.* at 33:22-23. Further, in the S.A.N.E. nurse's records, she notes it was the "tío David" that was touching the victim and the victim tried to tell her father about it, not that it was the father abusing the victim. (Dkt. No. 11-18 at 36 (State's Exhibit 20)). State's Exhibit 20 was admitted at trial. (Dkt. No. 11-15, Nov. 9, 2016 Trial Tr. at 29:6.)

[15] AEDPA is the well-recognized acronym for the Antiterrorism and Effective Death Penalty Act of 1996. *See* Pub. L. No. 104-132, 110 Stat. 1214 (1996). Said Act sets forth the limitation period that is at issue in

U.S.C. § 2244(d). *Id.* at 5. State contends, "nothing in the record indicates that any unconstitutional 'State action' prevented [Petitioner] from filing for federal habeas corpus relief prior to the end of the limitations period," citing 28 US.C. § 2244(d)(1)(C). *Id.* at 7. State also asserts Petitioner "fails to prove any meaningful factual predicate was unknown or could not have been discovered with due diligence prior to the time his conviction became final," citing 28 U.S.C. § 2244(d)(1)(D). *Id.* at 7-8. Finally, "[a]bsent a showing that another commencement date applies, the date that Rodriguez's judgment and sentence became final triggered the limitations period." *Id.* at 8 (citing 28 U.S.C. § 2244(d)(1)(A)).

State first addresses equitable tolling. State asserts Petitioner's "lack of counsel or legal training is insufficient for equitable tolling." (Dkt. No. 10 at 8.) State points out that "ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." (Dkt. No. 7 at 8-9 (citing *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999)).) Further, State addresses Defendant's unsupported assertion that "there was a two-week delay between the denial of his state habeas application and the date he received notice of the denial." *Id.* at 9. State acknowledges that although a delay in receiving notice can constitute an exceptional circumstance warranting equitable tolling, a two-week delay is not enough to entitle Petitioner to such relief. *Id.* (citing *Hudson v. Quarterman*, 332 F. App'x 209, 210 (5th Cir. 2009)).

State contends that if the date Rodriguez allegedly delivered his state habeas application to prison officials is correct, then he "knew such a delay with the mail was possible." (Dkt. No. 10 at 10.) According to State, Petitioner would have known the delay was possible because when he

---

this habeas matter.

delivered his state habeas application to the prison mail system on January 26, 2020, the application was not received until February 11, 2020. *Id.* Accordingly, Petitioner should have expected a similar delay with his amended state habeas application that he placed in the prison mail system on May 25, 2021, as it was not received until June 10, 2021. *Id.* State concludes, "[E]ven if his factual assertions concerning the delay are true, nothing in the record shows that the State actively misled Rodriguez about his case or that extraordinary circumstances prevented him from asserting his rights." *Id.* (cleaned up).

State then addresses whether Petitioner was diligent in pursuing his claim. (Dkt. No. 10 at 10.) State claims Petitioner was not diligent in asserting his rights because Petitioner had "only days left" when he filed his state application and then waited over fourteen months to file his federal habeas, waiting until after the TCCA refused discretionary review. *Id.* at 11. State asserts a petitioner cannot wait until near a deadline to make a filing and then seek equitable tolling when something goes wrong. *Id.* (citing *Johnson v. Quarterman*, 483 F.3d 278, 287-88 (5th Cir. 2007)).

State also argues Petitioner "could have filed a protective petition after receiving the trial-court findings or submitting his amended petition because he knew or should have known how little time he had remaining." (Dkt. No. 10 at 12.) State contends this is especially because "[Petitioner] had already seen two similar delays during the state habeas process and had even more time to file one." *Id.*

Finally, addressing actual innocence, State argues Petitioner "fails to show that it is more likely than not that no reasonabl[e] juror would have convicted him in light of new evidence." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Based on the foregoing, State asks the Court

to dismiss Rodriguez's petition with prejudice as untimely and that a certificate of appealability be denied. (Dkt. No. 1 at 14.)

On March 25, 2022, Petitioner filed a Response to Respondent's Motion for Summary Judgment. (Dkt. No. 14.) In it, Petitioner emphasizes that his untimeliness in filing the instant petition is due to his incarceration, his *pro se* status, and the "State created impediment" of which Petitioner is referring to a delay in the postmarking and sending of the TCCA's denial. *Id.* at 2-3. Regarding this latter point, Petitioner references a seven-day delay in the postmarking and sending of Exhibit E, a copy of the TCCA denial without written order, dated June 30, 2021, yet postmarked on July 7, 2021. *Id.* at 3. In support of his argument that this delay in sending notice should be considered extraordinary, Petitioner provides four examples of other dismissal notifications to other inmates that were mailed the same day or within two days of being issued. *Id.* at 9-12 (identified as Exhibits A-D). Thus, Petitioner postulates that had his notice been mailed within one or two days of issuance, Petitioner would have had five days to file a timely habeas petition. *Id.* at 4. Furthermore, Petitioner submits that once he received notification of the denial, the federal habeas petition was filed the same day, July 14, 2021, just two days past the deadline. *Id.* at 2. In other words, Petitioner argues that if the TCCA's denial had been sent as per the normal course of action, Petitioner's habeas petition would have been timely filed and such delay was due to circumstances beyond his control.

On March 25, 2022, Petitioner also filed a Motion for Appointment of Counsel (Dkt. No. 15) and Motion for Evidentiary Hearing (Dkt. No. 16).

Petitioner prays for the Court to grant his habeas petition and vacate his conviction and sentence "requiring the State of Texas to retry within a reasonable period of time, release or issue order of acquittal." (Dkt. No. 4 at 26.) Petitioner also prays the court find he has timely filed his

federal habeas petition, refuse to allow further briefing by the Respondent on the merits of the case, find the Petitioner has met his burden of proof, and grant federal habeas review, providing subsequent relief as warranted. (Dkt. No. 14 at 6.)

## APPLICABLE LAW & ANALYSIS

### I. Summary Judgment Review

Respondent has formally filed a Motion for Summary Judgment. (Dkt. No. 10.) Summary judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant for summary judgment presents "a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted). Within this review, a district court must generally construe disputed facts in a light favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In the context of a habeas petition, however, the applicant bears "the burden of rebutting the presumption of correctness [of the state court's factual determinations] by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Federal Rules of Civil Procedure apply so long as there is not a conflict with the federal rules governing habeas proceedings. *Banister v. Davis*, 140 S. Ct. 1698, 1705 (2020) (citing Fed. R. Civ. P. 81(a)(4); R. Gov. Sec. 2254 Cases 12). Therefore, these claims are reviewed pursuant to Federal Rule of Civil Procedure 56(a) unless there is a conflict with the Rules governing section 2254 cases.

**II. 28 U.S.C. § 2254**

An application for a writ of habeas corpus by a person in custody under the judgment of a state court can only be granted on grounds that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas proceedings must honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). Relief, therefore, is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

**a. <u>Exhaustion</u>**

However, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A), (c). The exhaustion requirement "is grounded in principles of comity and reflects a desire to protect the state courts' role in the enforcement of federal law." *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (internal quotation marks and citations omitted). The rule has been "[c]odified since 1948 in 28 U.S.C. § 2254" and "while not a jurisdictional requirement [the rule] creates a strong presumption in favor of requiring the prisoner to pursue his available state remedies." *Id.* (internal quotation marks, internal citations and footnote omitted). When a

petitioner has properly raised a federal constitutional claim before the state courts, "and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review." *Ramey v. Davis*, 314 F. Supp. 3d 785, 802 (S.D. Tex. 2018).

If a petitioner fails to adequately set forth the claim for review before the state court, said petitioner has not exhausted his state remedies and is precluded from bringing forth the claim for the first time in federal court. *See* 28 U.S.C. § 2254(b)(1). Similarly, if the claim is reviewed but the state court rejects on procedural grounds, the claim is also barred from federal habeas review. *Richter*, 562 U.S. at 103. However, the federal bar from review in each instance can be set aside if the petitioner can establish "cause" for the noted default and "actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**b. <u>Ineffective Assistance of Counsel and Section 2254(d)</u>**

As noted, each of Petitioner's claims relate to ineffective assistance of counsel. Under a federal habeas petition, ineffective assistance of counsel claims are analyzed under the well-known two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy the burden, a federal habeas petitioner must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. "To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms." *Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (internal quotations and citations omitted). To establish prejudice, one "must show counsel's deficient performance was 'so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'" *Id.* at 432 (alteration original) (quoting *Strickland*, 466 U.S. at

687). "This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

However, for a state habeas petition, the standard of review of ineffective assistance of counsel is "doubly" deferential under § 2254(d) applied in tandem with *Strickland*. *Richter*, 562 U.S. at 105. Deference is provided to both the trial counsel's performance and the state habeas court's assessment of said performance. *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) (citation omitted). This deference is set out because "AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Therefore, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Richter*, 562 U.S. at 105. For a state habeas claim, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

**c. <u>Federal Habeas Review</u>**

"While 'the Framers considered the writ a vital instrument for protection of individual liberty,' . . . federal courts traditionally rely on principles of finality, comity, and federalism to narrow the scope of federal habeas review." *McGowen v. Thaler*, 717 F. Supp. 2d 626, 637 (S.D. Tex. 2010) (quoting *Boumediene v. Bush*, 553 U.S. 723, 743 (2008)).

Likewise, the application must also be timely filed.

**III. Statute of Limitations and Equitable Tolling**

AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). In most cases, the one-year limitation period runs from the "date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[16]

In the present action, Petitioner was sentenced to life imprisonment. Petitioner timely appealed and his conviction was affirmed on May 17, 2018. On November 7, 2018, the TCCA refused Petitioner's petition for discretionary review. The language of § 2244(d)(1)(A) provides that a decision becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." The "conclusion of direct review" occurs when the Supreme Court either rejects the petition for certiorari or rules on its merits. *Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009); *see also Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Or, if no petition for certiorari is filed, judgment becomes final by "the expiration of the time for seeking such review." *Roberts*, 319 F.3d at 694 (quoting § 2244(d)(1)). Consequently, Petitioner's judgment became final on February 5, 2019, which marked the expiration of the 90-day period in which Petitioner could have sought further review with the Supreme Court.

Absent any tolling, the AEDPA one-year limitation period expired on February 5, 2020, and Petitioner's present petition, submitted July 23, 2021 (Dkt. No. 1), comes over a year too late. In Petitioner's federal habeas application and Petitioner's Response, Petitioner raises arguments

---

[16] The complete limitations are codified at 28 U.S.C. § 2244(d)(1) as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

suggesting he is entitled to statutory and equitable tolling. Accordingly, the possibility of both statutory tolling, pursuant to 28 U.S.C. § 2244(d)(1)(A-B), and equitable tolling will be considered.

**a. Statutory Tolling**

AEDPA establishes a one-year limitation period for state prisoners to file for federal habeas relief, which "run[s] from the latest of" four specified dates. 28 U.S.C. § 2244(d)(1)(A-D). Petitioner puts forth grounds for statutory tolling pursuant to § 2244(d)(1)(A). Petitioner does not claim or suggest he is entitled to statutory tolling under § 2244(d)(1)(B),[17] § 2244(d)(1)(C), or § 2244(d)(1)(D), so those provisions will not be addressed in the following analysis.

Although Petitioner is not necessarily making an argument on the grounds of 28 U.S.C. § 2244(d)(1)(A), since this statutory provision is applicable, an explanation of it is warranted.

Under § 2244(d)(1)(A), the one-year limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Petitioner's judgment became final on February 5, 2019, 90 days after his PDR was refused. *See* 28 U.S.C. § 2244(d)(1)(A); *see also* Sup. Ct. R. 13(1). Accordingly, absent tolling, the period for filing a federal habeas petition expired on February 5, 2020.

However, pursuant to § 2244(d)(2), the one-year limitation period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." Petitioner filed his state application on January 26, 2020,[18] before the expiration of the

[17] To invoke § 2244(d)(1)(B) Petitioner must show: "(1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir.1998)). Here, Petitioner complains of a state-created impediment, however, in the context of equitable tolling and it is addressed at such in this report and recommendation. *Id.* at 437 (citing *Scott v. Johnson,* 227 F.3d 260, 263 (5th Cir.2000)).

[18] Like the rule governing submissions of federal habeas applications, state habeas applications follow the prison mailbox rule. *Richards*, 710 F.3d at 578-79.

limitation period on February 5, 2020. (Dkt. No. 11-70 at 98, 125.) This state habeas application was pending from January 26, 2020, to June 30, 2021. *Id.*; *see also* Dkt. No. 11-64. Accordingly, the limitations period tolled for a total of 522 days. *See* 28 U.S.C. § 2244(d)(2). Consequently, Rodriguez's deadline to file his federal habeas petition was extended 522 days from February 5, 2020—July 11, 2021. Because July 11th was a Sunday, Petitioner had until Monday, July 12, 2021, to file. *See* Fed. R. Civ. P. 6(a)(1)(C). But since Petitioner placed his federal habeas petition in the prison mail system on July 14, 2021, absent equitable tolling, Petitioner's submission of the present federal writ is late by two days.

**b. Equitable Tolling**

Although Petitioner does not directly address whether he was prevented by extraordinary circumstances from timely filing or if he was diligent in pursuing his rights, to the extent Petitioner's assertions regarding the delay in the mail system may be liberally construed as a claim for equitable tolling, the undersigned addresses this claim below.

It is well-established that in appropriate circumstances AEDPA's one-year statute of limitations can be equitably tolled since the limitations are not considered a jurisdictional requirement for habeas review. *Holland v. Florida*, 560 U.S. 631, 645-49 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Regarding the "pursuing his rights diligently" requirement, Petitioner must demonstrate "'reasonable diligence,' not 'maximum feasible diligence.'" *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Holland*, 560 U.S. at 653). "[N]either excusable neglect nor ignorance of the law is

sufficient to justify equitable tolling." *Id.* at 503 (quoting *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)).

Further, equitable tolling "is not intended for those who sleep on their rights." *Id.* (quoting *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012)). "Long delays in receiving notice of state court action may warrant equitable tolling." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). But, to warrant equitable tolling based on delayed notice, the petitioner must show that he pursued relief from his conviction "with diligence and alacrity *both before and after receiving notification*." *Id.* (internal quotation marks and citation omitted) (emphasis added). Notably, "equitable tolling is only available in 'rare and exceptional circumstances.'" *Jackson v. Davis*, 933 F.3d 408, 410 (5th Cir. 2019) (quoting *Hardy*, 577 F.3d at 598). However, "[a]s a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules, [and the court] draw[s] on general principles to guide when equitable tolling is appropriate." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).

**i. Extraordinary Circumstances**

Although Petitioner does not address "extraordinary circumstances" directly, the undersigned, out of an abundance of caution, will also address Petitioner's attempted justifications for his untimeliness, that he was incarcerated and proceeding *pro se*, as well as the "State created obstructions" the Petitioner notes, to the extent they can be liberally construed as extraordinary circumstances. (Dkt. Nos. 1 at 9; 14 at 3.) In response to Respondent's Motion for Summary Judgment, Petitioner again urges he is "incarcerated, proceeding pro se, and has no means of notification other than via the Clerk of the Court . . . ." (Dkt. No. 14 at 3.) Also, Petitioner states he was unable to timely file because the State "worked to delay said application" by not

postmarking the notification of his Article 11.07 Texas state writ denial until July 7, 2021, about a week after the denial was decided on June 30, 2021. (Dkt. Nos. 1 at 9; 14 at 3, 13.) Then, Petitioner alleges he did not receive the notification from the prison mailroom until July 14, 2021. (Dkt. No. 1 at 9.)

**(1) Conditions of Prison Confinement and Lack of Counsel**

Generally, conditions unique to prison confinement do not qualify as extraordinary circumstances. *Madis v. Edwards*, 347 F. App'x 106, 108 (5th Cir. 2009) (citing in part *Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D. N.Y. 2002) ("[T]ransfers between prison facilities, solitary confinement, lockdowns, and restricted access to the law library do not qualify as extraordinary circumstances warranting equitable tolling.")). And ignorance of the law and lack of knowledge about filing deadlines and how to file documents, even with a petitioner's *pro se* status, do not indicate entitlement to equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000) (as cited in *Garrett v. Dretke*, 3:01-CV-02677-P, 2003 WL 22862679, at *2 (N.D. Tex. 2003), "noting that ignorance of the law, lack of knowledge of filing deadlines, a prisoner's pro se status, illiteracy, deafness, lack of legal training, and actual innocence claims do not support equitable tolling of the AEDPA statute of limitations").

Petitioner has failed to allege how his conditions of prison confinement or lack of representation prevented him from timely filing his federal habeas application. Accordingly, Petitioner does not show that his conditions of prison confinement or his *pro se* status caused extraordinary circumstances warranting equitable tolling.

**(2) Delay in Notice**

A long delay in receiving notice can constitute an exceptional circumstance that warrants equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (holding that a four-

month delay is exceptional); *see also Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (concluding a delay of "several months" is exceptional). However, a two-week delay in receiving notice is not an extraordinary circumstance. *Cf. Kangas v. Dretke*, 100 F. App'x 977, 978 (5th Cir. 2004) ("The state's delay of nine days in transmitting the notice . . . for state habeas relief, in combination with Kangas waiting until only three days remained in the statutory period to file his state writ application, does not constitute a 'rare and exceptional circumstance' warranting equitable tolling." (citation omitted)); *Wilson v. Johnson*, No. 6:99-CV-727, 2001 WL 498732, at *1 (5th Cir. 2001) (where a three-day delay in notice did not entitle the petitioner to equitable tolling).

As described above, Petitioner's alleged delay lasted approximately two weeks. This is not enough to create an extraordinary circumstance that entitles Petitioner to equitable tolling of his petition. As noted by the Fifth Circuit:

> In past cases, we have focused on the reasons for missing the deadline rather than on the magnitude of the tardiness. At the margins, all statutes of limitations and filing deadlines appear arbitrary. AEDPA relies on precise filing deadlines to trigger specific accrual and tolling provisions. Adjusting the deadlines by only a few days in both state and federal courts would make navigating AEDPA's timetable impossible. Such laxity would reduce predictability and would prevent us from treating the similarly situated equally. We consistently have denied tolling even where the petition was only a few days late.

*Lookingbill v. Cockrell*, 293 F.3d 256, 264-65 (5th Cir. 2002) (citations omitted) (denying equitable tolling where a petitioner missed the AEDPA deadline by four days as his argument for equitable tolling only constituted a "garden variety claim of excusable neglect").

Based on the foregoing facts and case law, Petitioner is not entitled to equitable tolling for the delayed notice is not an extraordinary circumstance.

**ii. Diligence**

However, assuming the delayed notice could be considered an extraordinary circumstance, the undersigned will address the alternate prong of the equitable tolling requirements—diligence, which Petitioner also fails to meet. Petitioner delivered his state habeas application to the prison mail system on January 26, 2020. This was over eleven and one-half months after the limitations period began. And it left Petitioner only days between notification of the state writ decision and what would be a timely filing of his federal writ.

"[A] component of the obligation to pursue rights diligently is not to wait until near a deadline to make a filing, then seek equitable tolling when something goes awry." *See Schmitt v. Zeller*, 354 F. App'x 950, 952 (5th Cir. 2009) (citing *Johnson v. Quarterman*, 483 F.3d 278, 287-88 (5th Cir. 2007) (attempting to file on the last day of the limitations period and encountering a computer problem preventing timely filing lacked due diligence)).[19] Simply put, "[l]eaving little margin for error is incautious and not diligent." *Id.* (having only two months to act once the state habeas proceedings concluded, having squandered ten months of the one-year period before filing the state application, was a factor in denying equitable tolling).

Considering Petitioner waited days before the end of the limitations period prior to delivering his state habeas application for mailing, Petitioner fails to establish he diligently pursued his rights. *See Hudson*, 332 F. App'x at 210 (where the petitioner waited eleven and one-half months before submitting his state writ and was not entitled to equitable tolling); *see also Stroman v. Thaler*, 603 F.3d 299, 301 (5th Cir. 2010) (where the petitioner waited almost seven months to file his state habeas and was not entitled to equitable tolling). In *Webb v. Dretke*, 165 F. App'x 375, 376 (5th Cir. 2006), the petitioner was not entitled to equitable tolling for a petition that was

[19] In *Johnson v. Quarterman*, 483 F.3d, 278, 287-88 (5th Cir. 2007), the court also noted nothing prevented the petitioner from timely filing a "skeletal" petition pending resolution of the state review.

five days late and where there was almost a two-week delay between the date he delivered his state habeas application to the prison mail system and the date that it was filed in state court. Said petitioner was not diligent in waiting eleven months to seek post-conviction relief. *Webb*, 165 F. App'x at 376.

Notably, *Hudson* and *Webb* were both decided before the Fifth Circuit held in *Richards*, 710 F.3d at 578, that the prison mailbox rule applied to state habeas applications. Despite this distinction, however, the underlying principle in these cases remains the same: a petitioner is not diligent when he or she waits until the end of the limitations period to file his or her state habeas application, then later misses the federal habeas application limitations date due to a short delay in notice. In other words, had the petitioner been diligent in filing his state habeas application, a short delay, such as the two-week delay in receiving notice of the state writ decision, would not have affected Petitioner's timeliness. *See Evens v. Davis*, No. 3:17-CV-2512-M-BH, 2019 WL 2931945, at *4 (N.D. Tex. June 14, 2019) (where the petitioner was not entitled to equitable tolling because, after waiting one year from the denial of his state writ to file his federal writ, he did not show he diligently pursued his rights), *report and recommendation adopted*, No. 3:17-CV-2512-M, 2019 WL 2929626 (N.D. Tex. July 8, 2019).

Courts have distinguished those petitioners who have adequate justifications for waiting towards the end of the one-year statutory tolling period to file their state writs from those petitioners who do not. For example, the court held in *Jimenez v. Butcher*, 839 F. App'x 918, 919-20 (5th Cir. 2021), that counsel's deception and tardiness was the reason nearly eleven months of the one-year filing period had been used up, constituting extraordinary circumstances. Further, in *Kaizer v. Stephens*, No. 2:15-CV-396, 2016 WL 10920484, at *6 (S.D. Tex. Mar. 3, 2016), the court determined equitable tolling was warranted based on evidence that the petitioner delayed

filing his state habeas writ because he "was trying to gather evidence and documentation before he filed it." In reaching this decision, however, the court distinguished the case before it from another case that the respondent in *Kaizer* relied upon, *Kangas v. Dretke*, 100 F. App'x 977, 978 (5th Cir. 2004). *Kaizer*, 2016 WL 10920484, at *6. In *Kangas*, as mentioned above, the Fifth Circuit held the petitioner was not entitled to equitable tolling where the circumstances at issue, "the State's delay of nine days in transmitting notice of the court's action on the petitioner's application for state habeas relief, in combination with his waiting until only three days remained in the statutory period to file his state writ application, did not constitute a rare and exceptional circumstance . . . ." *Id.* (citing *Kangas*, 100 F. App'x at 978). The court in *Kaiser*, however, focused on the fact that *Kangas* "contains no discussion of whether the petitioner was diligent, or why he waited until three days before the limitations period ran to file the state habeas petition." *Id.* In short, for a petitioner to be entitled to equitable tolling, he must demonstrate an adequate justification for his delay in filing his state habeas petition, even when the deadline was missed by mere days.

In contrast, the court in *Castro v. Lumpkin* held equitable tolling did not apply where the petitioner did not explain his delay in filing and nothing in the record showed why he could not have filed earlier. *See* No. CV H-19-4933, 2020 WL 8083675, at *2 (S.D. Tex. Dec. 2, 2020), *report and recommendation adopted*, No. CV H-19-4933, 2021 WL 51434 (S.D. Tex. Jan. 6, 2021), *certificate of appealability denied*, No. 21-20030, 2021 WL 3125112 (5th Cir. May 18, 2021), *cert. denied*, 142 S. Ct. 438, 211 L. Ed. 2d 258 (2021). Similarly, in *Garza v. Davis*, the court found the petitioner was not diligent when he failed to provide sufficient evidence explaining why he waited almost ten months after his conviction became final to file his state habeas petition and where petitioner based his claim upon evidence available to him during the limitations period.

*See* No. 2:18-CV-335, 2019 WL 2374200, at *3 (S.D. Tex. Mar. 13, 2019), *report and recommendation adopted,* No. 2:18-CV-335, 2019 WL 2368614 (S.D. Tex. June 5, 2019).

Petitioner, unlike the petitioners in *Kaizer* and *Jimenez*, has not adequately explained why he waited over eleven and one-half months to submit his state habeas writ. Petitioner did not argue, as in *Kaizer*, that he was gathering documents he believed were necessary to his claims. In fact, Petitioner had all the information to support his claim years before he submitted the state writ (and now his federal writ).[20] Neither did Petitioner claim, as in *Jimenez*, that he was duped into thinking his petition was being worked on and would be submitted on time.

Therefore, without any adequate justification for Petitioner's eleven-and-a-half-month delay in submitting his state application, Petitioner cannot show that he was diligent, even if a two-week delay in receiving notice of the state writ denial in the mail is deemed an extraordinary circumstance.

In sum, the record reflects Petitioner did not pursue his rights with reasonable diligence. Without more, equitable tolling does not apply. Therefore, his petition should be dismissed with prejudice.

## IV. Actual Innocence as a Basis for Habeas Review

Petitioner asserts, as part of his ineffective assistance of counsel claims, that his defense counsel failed to investigate the possibility of another perpetrator. (Dkt. No. 4 at 20.) Liberally construed, Petitioner is claiming actual innocence as an exception to the AEDPA time limitations.

A claim of actual innocence may provide "a gateway through which a petitioner may pass" when the limitation period has elapsed. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

---

[20] Petitioner's claims are largely ineffective assistance of counsel claims stemming from his trial in 2016. Further, Petitioner already had Lynette's affidavit from 2015, so Petitioner was not using his eleven-and-a-half-month delay to contact potential witnesses or to gather affidavits as in *Kaiser*.

However, "tenable actual innocence gateway pleas are rare." *Id.* To meet the threshold requirement and "invoke the miscarriage of justice exception to AEDPA's statute of limitations, … a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 399 (quoting *Schlup*, 513 U.S. at 327). "To be credible, an actual innocence claim requires a petitioner to support allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324.

Further, an "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 569 U.S. at 399. In other words, "[a] court may consider how the timing of the submission and the likely credibility of a [petitioner's] affiants bear on the probable reliability of … evidence [of actual innocence]." *Id.* at 399 (quoting *Schlup*, 513 U.S. at 332). Thus, a court can consider "a petitioner's diligence, not discretely, but as part of the assessment whether actual innocence has been convincingly shown." *Id.* at 400. This standard under *Schlup* is "demanding" and "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316).

Here, Petitioner does not provide new evidence. Petitioner solely points to a contact log document that says, "[the Victim] disclosed to the Sane [sic] nurse she was sexually abuse [sic] by Mr. Alvarado." (Dkt. No. 4-9.) However, the S.A.N.E. nurse's records and testimony affirmed that the victim had consistently told the nurse that it was Petitioner, not her father, who had abused her. *See supra* n.14.

This is not one of the rare cases in which an actual innocence exception should apply as there is no proffered evidence calling into question the outcome of the trial. Accordingly, Petitioner is not entitled to habeas review based on his claim of actual innocence.

**V. Petitioner's Claims**

Courts are encouraged to resolve procedural issues before reaching the merits of a habeas claim. *See United States v. London*, 937 F.3d 502, 509-10 (5th Cir. 2019) (Costa, J., concurring) (noting the Supreme Court encourages "courts to 'first resolve procedural issues' before answering constitutional questions") (quoting *Slack v. McDaniel*, 529 U.S. 473, 485 (2000)). Petitioner has raised fifteen grounds for review in his federal habeas writ. *See* list *supra* Section II: Summary of the Pleadings at 8-9, ¶ 1. However, considering there is no basis for equitable tolling, and because this § 2254 petition if filed late, Petitioner's claims of ineffective assistance of counsel by appellate and trial counsel, are all time-barred from review without a need to reach the merits of said claims.

**VI. Petitioner's Request for Counsel and Evidentiary Hearing**

On March 25, 2022, Petitioner filed a Motion for Appointment of Counsel (Dkt. No. 15) and Motion for Evidentiary Hearing (Dkt. No. 16).

The undersigned may appoint counsel "in the interest of justice" for a "financially eligible person" who is seeking relief under 28 U.S.C. § 2254. *See* 18 U.S.C. § 3006A(a)(2)(B); *see also* R. Gov. Sec. 2254 Cases 8(c). A court does not abuse its discretion in denying such a request when there has been a "clear presentation of the claims and the applicable law to the district court showed that the interests of justice did not require the appointment of counsel." *United States v. Watkins*, 510 F. App'x 325, 326 (5th Cir. 2013). However, "[i]f necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under

18 U.S.C. § 3006A." *See* R. Gov. Sec. 2254 Cases 6(a). And, "[i]f an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A." *See* R. Gov. Sec. 2254 Cases 8(c).

As discussed above, Petitioner's habeas writ is untimely. Thus, regardless of whether Petitioner has clearly presented his claims, the applicable law directs the undersigned to dismiss said claims before reaching their merits and, consequently, without need for a hearing based on the information set forth in the record. Nor, for the same reason, is there a need for any discovery.

Accordingly, the undersigned finds the interests of justice do not require appointment of counsel or the requested evidentiary hearing and said requests should be denied.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law, Petitioner's claims are barred by the relevant statute of limitations and are not subject to equitable tolling nor do they present a demonstrative claim that failure to consider the underlying claims will result in a fundamental miscarriage of justice. Therefore, the undersigned recommends Respondent's Motion for Summary Judgment with Brief in Support (Dkt. No. 10) be **GRANTED** and Petitioner's Motion for Appointment of Counsel (Dkt. No. 15) and Petitioner's Motion for Evidentiary Hearing (Dkt. No. 16) be **DENIED as moot**

Accordingly, it is also recommended that Petitioner's § 2254 petition (Dkt. No. 1) be **DISMISSED**. Finally, the undersigned recommends the Court **DECLINE** to issue a Certificate of Appealability, and Petitioner's case should be closed.

***Certificate of Appealability***

The undersigned recommends that the District Court deny a Certificate of Appealability. Petitioner may not appeal the final order of a habeas corpus proceeding "unless the circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). The § 2254 rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Gov. Sec. 2254 Cases 11. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability ("COA").

A COA "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When a claim is denied on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002). A petitioner may satisfy this requirement by showing, in the alternative, that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Jones*, 287 F.3d at 329. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's request to overcome the untimely filing of the habeas petition is being denied because although Petitioner's state habeas application tolled the one-year limitation, equitable tolling is inapplicable, and Petitioner cannot establish a miscarriage of justice based on his claim of actual innocence. Therefore, Petitioner's instant petition is untimely filed. Reasonable jurists would not find it debatable that Petitioner has not set forth a valid claim of denial of a constitutional right or that the court was incorrect in its procedural ruling as to each of the claims being time-barred from habeas review.

Therefore, it is recommended that the District Court deny a COA.

***Notice to the Parties***

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Petitioner and Counsel for Respondent.

**DONE** at McAllen, Texas, this 18th day of May, 2022.

Juan F. Alanis
United States Magistrate Judge